472 A.2d 1091

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**William A. KELLIHER.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1983.

Filed Feb. 10, 1984.

William L. Thurston, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Paul W. Kilgore, Lebanon, for appellee.

Before McEWEN, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by the Commonwealth from the Order of the Court of Common Pleas of Lebanon County (per

Judge Walter) awarding the appellee, William A. Kelliher, a new trial after a hearing conducted pursuant to the Post-Conviction Hearing Act (PCHA). 19 P.S. § 1180–1 et seq., as amended; reenacted as 42 Pa.C.S.A. §§ 9541–9551. We reverse.

Following a joint trial in which the appellee and a John Krall were found guilty of burglary, conspiracy and receiving stolen property, post-trial motions raised issues of sufficiency of the evidence and alleged trial errors, one of which concerned the permissibility of the Commonwealth to cross-examine defense witness Bonnie Sweigart as to her placement in the Accelerated Rehabilitative Disposition (ARD) program. Thereafter, the motions were denied, sentence was imposed and an appeal, raising all of the issues presented to the post-trial motions court, was perfected. A panel of this Court, consisting of Judges Spaeth, Cavanaugh and O'Kicki, affirmed the judgment of sentence in a per curiam opinion.[1] *Commonwealth v. Kelliher,* 287 Pa. Super. 582, 428 A.2d 247 (1980). Petition for allowance of appeal was denied by the Pennsylvania Supreme Court on January 21, 1981 [No. 512 E.D.Misc. Docket 1980].

Prior to the Supreme Court's denial of appellee's request for *allocatur,* counsel for the appellee filed a "Petition For Post Conviction Relief" on January 7, 1981. Therein it was alleged that the appellee was "eligible for relief because of the use by the state of perjured testimony of Terry Deck which ha[d] recently come to the attention of Petitioner." After a hearing, the PCHA court denied appellee's petition on the ground that he failed to prove that the recantation was true. An appeal was perfected from the September 2, 1981 PCHA Order and docketed in this Court on October 5, 1981 at No. 2560 Philadelphia, 1981. As of the date of this Opinion, the case is still pending.

---

**1.** *See* Memorandum Opinion filed June 20, 1980 by a panel of this Court and captioned *Commonwealth v. Kelliher* at Journal No. 2049 of 1979. It consists of 9 pages and specifically responds to Kelliher's request for a new trial based on the prosecution's inquiry of co-defendant Krall's girlfriend's arrest for retail theft and her ultimate placement in the Accelerated Rehabilitative Disposition program.

Notwithstanding the pendency of the prior appeal, appellee filed a second PCHA petition and, as a result of a hearing conducted thereon, was awarded a new trial. In doing so, the PCHA court made the following relevant findings of fact:

16. On June 1, 1981, petitioner filed his second petition under the Post Conviction Hearing Act predicated on the reason a different Superior Court panel* had awarded co-defendant John Krall a new trial, finding reversible error in what Kelliher's panel determined harmless: improper impeachment testimony elicited under cross-examination of a witness' placement in the A.R.D. program (as if it were a conviction).

17. ...

18. On August 7, 1981, the Court entered its Order continuing th[e evidentiary] hearing and order pending final resolution of the Commonwealth's petition for reargument of the Superior Court's award of a new trial for John R. Krall.

19. The Superior Court of Pennsylvania denied the Commonwealth's request for reargument.

20. The Petition for Allowance of Appeal with the Supreme Court of Pennsylvania in the companion *Krall* case was denied December 22, 1981.

21. The *Krall* case was remanded to the Court of Common Pleas January 5, 1982, for a new trial.

---

* *Commonwealth v. Krall,* [290] Pa.Super. [1], 434 A.2d 99 (1981).

The PCHA court went on to discuss that the decision denying Kelliher's initial appeal was in the nature of a "Memorandum Opinion," *vis-a-vis* the ruling granting co-defendant Krall's request for a new trial was an authored "Opinion." He found that this distinction, read in light of the succeeding language preceding all notices of cases decided in *memorandum* form by the Superior Court and listed as such in the Official and Atlantic Reporter Systems, rendered the "Memorandum Opinion" issued in Kelliher's case to be of no force or effect. The notice consists of the following language:

SUPERIOR COURT OF PENNSYLVANIA

Notice to the Bar

The Superior Court of Pennsylvania, commencing with cases heard or submitted during the March 1979 session, adopted a practice whereby some cases are affirmed per curiam, without a published opinion. However, a memorandum opinion has been prepared and filed by the Superior Court in most of these cases and copies of the memorandum opinion have been forwarded to the chief counsel for the parties and to the lower court. These memorandum opinions contain the rationale of the Superior Court in reaching its decision. Copies of these memorandum opinions may be procured by members of the Bar or any member of the public at the prothonotary's office of the Superior Court in the district in which the case arose. These memorandum opinions are not to be considered as precedent and cannot be cited for any purpose.

Immediately after citing the aforesaid, the PCHA court ended its discussion by observing, "In that fashion we arrive at the conclusion the precedent has been fixed for the issue in question by the decision and opinion in *Commonwealth v. Krall.* Viewed in that light the trial court for Kelliher committed reversible error in permitting witness impeachment using that witness' enrollment in an A.R.D. program." (PCHA court Opinion at 6) From the Order granting Kelliher a new trial, the Commonwealth instituted the instant appeal.

Although we could dispose of the present appeal under the caption of a "Memorandum Opinion" by holding that the issue raised by the appellee in his second PCHA petition has either been "finally litigated" or "waived," see 42 Pa.C.S.A. § 9544, we feel compelled to respond in the form of an authored opinion to:

1) dispel the misconception engendered by the PCHA court regarding the efficacy of this Court's "Memorandum Opinions;" and

2) lay to rest once and for all the erroneous belief that under the facts of this case Kelliher is entitled to a new trial.

As to Point 1, we observe that as of July of 1983 the bench and bar have been afforded some insight into, *inter alia*, the role of this Court's unpublished "Memorandum Opinions" in a booklet captioned, "Internal Operating Procedures For the Superior Court of Pennsylvania." Therein, at pages 9–10, under the heading "V. DISPOSITION OF APPEAL" appears, as is applicable here, the following:

## 8. PREPARATION AND CIRCULATION OF OPINIONS.

The court shall publish either a signed opinion, an opinion per curiam, or a per curiam order. A per curiam order may be supported by a memorandum opinion which shall not be published and may not be cited as precedent in any brief, argument or subsequent opinion. As to published opinions, if the decision of the court is not unanimous, one or more concurring or dissenting opinions may be published, or there may be a notation, without an accompanying opinion, that a judge concurs in the result or dissents. After a proposed opinion is drafted, copies are sent, by the author, to the other members of the panel or the court en banc, to Central Legal Staff for conflict clearance, and to the Recorder's Office. The panel or en banc members must provide their written votes to the opinion's author, the other panel members, Central Legal Staff and the Recorder's office.

Memorandum concurring and dissenting opinions are treated the same as memorandum majority opinions and will not be published in bound volumes unless any two judges of a panel authorize publication. Disputes will be resolved by the President Judge. If the vote is for publication then the majority memorandum opinion will be filed as an Opinion Per Curiam unless its author wishes to sign the opinion.

The opinion is ready for filing if it has commanded a majority and if Central Legal Staff has formally notified that no conflict exists. The majority opinion, along with any accompanying opinions or vote notations, should then be sent to the appropriate Prothonotary's office for filing and publication. The Prothonotary shall thereafter forward copies of filed opinions to all judges.

Only one minor revision has occurred in regard to the aforecited since the publication of the 1983 Internal Operating Procedures pamphlet; i.e.:

2. A concurring or dissenting memorandum opinion will be treated the same as a majority memorandum opinion and will not be published in bound volumes unless its author desires the opinion to be published, in which event the majority opinion will be converted into an opinion per curiam or a signed opinion.

First and foremost, this Court wishes to note that the objective in foregoing the publication of a "Memorandum Opinion" in the reporter systems is two-fold, both of which we believe benefit the bench, the bar and at the same time do justice to the litigants.

Initially, we wish to make it known that the fact that a "Memorandum Opinion" is not to be cited for precedential value does not in any way detract from or minimize its legitimacy. Rather, this concept (or approach) is rooted in the fact that the case presents no novel question of law or fact which has not already been expounded by a prior decision of an appellate court of this Commonwealth.

The second concern is the futility of publicizing each and every opinion disposing of a case when the case:

(a) raises no substantial legal issue;

(b) is controlled by statute and no substantial question of interpretation, constitutional or public importance is raised;

(c) is controlled by a published decision that is not challenged for any infirmity that requires reexamination of the rule; and

    (d) involves factual issues and the evidence is conflicting, so that application of the appropriate standard requires deference to the trial court or the jury.

We believe that the bench and bar is inundated with enough literature to occupy its reading time without having to add to it, unnecessarily, cases that deal with accepted principles of law already in print. Thus, there is no need for duplication by having the manner in which a case is disposed of preserved in the Official and Atlantic Reporter systems.

■ To eliminate any doubt one may have as to the weight this Court attaches to a "Memorandum Opinion," we want to make it clear that the ruling entered in any "Memorandum Opinion" is to have the same force and effect as if it were authored and is controlling as to the facts of that case and is the law of that case until overruled, either by a court en banc or the Pennsylvania Supreme Court.

Having laid to rest the subject of the role served by, and the viability of, the "Memorandum Opinion" in the scheme of appellate review in this Court, we can now turn our attention to the propriety of the new trial awarded by the PCHA court to the appellee.

Simply stated, it is the PCHA court's position that Kelliher is entitled to the same type of relief secured by codefendant John Krall (a new trial), inasmuch as the inquiry ruled to be prejudicial in *Commonwealth v. Krall, supra,* was made during their joint trial. Implicit in the PCHA court's ruling is the determination that Kelliher also was prejudiced by the prosecution's line of questions disclosing co-defendant Krall's girlfriend's entry into an ARD program in its attempt to impeach her credibility.

We find that a perusal of the applicable case law, when viewed against the backdrop of the trial transcript, undermines the PCHA court's ruling. Moreover, in order to facilitate our disposition of this appeal, we look to the following standard to determine if the issuance of a new trial was called for; i.e.:

    Every unwise or irrelevant remark made in the course of trial by a judge, a witness, or counsel does not require the

granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.

*Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), quoting *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957). Thus, "the critical factor in one['s] analysis is the prejudice which inures to the accused as a result of the" prosecution's cross-examination of co-defendant Krall's witness, Bonnie Sweigart. *See Commonwealth v. Iacino*, 490 Pa. 119, 126, 415 A.2d 61, 65 (1980). The complained of testimony was elicited by the prosecution during its cross-examination of Bonnie Sweigart; to-wit:

BY MR. LONG:

Q   Mrs. Sweigart, isn't it true that you were charged with the offense of retail theft, along with Paul Harlan [—Harlan was the Commonwealth's principal witness and the offense just mentioned was not related to the instant case—]?

THE COURT:   Answer the question yes or no.

A   Yes

Q   Isn't it true that Paul Harlan was going to testify against you in that case?

A   Yes

Q   Isn't it true that in that he was going to testify against you and you voluntarily placed yourself on the ARD program?

A   Yes.

MR. LONG:   That's all

(N.T. 7/5–6/78 at 227)

This court in *Commonwealth v. Krall, supra,* condemned the use of such evidence (because it did not lead to a conviction) for impeachment purposes, and, additionally, the *Krall* Court noted that the error was compounded by the trial court's reference to it in the charge to the jury:

Now members of the jury, you have heard evidence that two of the witnesses had been convicted of crimes of theft. Mr. Harlan was one, and—I don't want to make a mistake about this—Rebecca Brensinger?—

MR. LONG:

Bonnie Sweigart.

THE COURT:

—Oh, I'm sorry—Bonnie Sweigart; right, Bonnie Sweigart it was. It was the witness for Mr. Krall. Mr. Harlan, of course, was one of the witnesses for the Commonwealth. You may consider that evidence of prior conviction in deciding whether or not to believe all or part of their testimony, but that is the only purpose for which you may consider it. In doing so, you may consider the type of crime committed, how long ago it was committed, and how the conviction may effect [sic] the likelihood that either Bonnie Sweigart, or Paul Harlan, or both, has testified truthfully in this case. (N.T. 7/5–6/78 at 274–275)

It is undisputed that as to Krall, the egregious conduct of the prosecution and trial court warranted a new trial. However, as to appellee-Kelliher, "[t]he effect of such remarks depends upon the atmosphere of the trial[.]" *Commonwealth v. Guess*, 266 Pa.Super. 359, 370, 404 A.2d 1330, 1335 (1979).

The proprietor of Kleinfelter's Auction Room in Lebanon County testified that her second floor apartment, situated over the business, had been burglarized. She testified that the theft occurred sometime between Saturday noon on the 28th day of January, 1978 and the following day. She had closed the establishment for the weekend and had traveled to her farm in Fredericksburg, as it was her custom to do. While at her weekend retreat, she was phoned by neighbors and told that the doors to her business were opened. Upon her return, she discovered that the first floor business area had not been disturbed, and even the safe in the office was in its place. However, her second floor apartment had been entered and a safe (containing coins, jewelry and family documents) was missing. A false drawer in the Chippen-

dale desk had been "pulled out" and the purse containing two coins was gone. Several other antiques were taken as well, yet the apartment was not "ransacked."

Mrs. Kleinfelter proceeded to tell the jury that Kelliher had been an employee of hers for about 2 years before being fired for tardiness on the job. She also stated that Kelliher was her daughter-in-law's brother and was well aware of the "lay-out" of the building and Mrs. Kleinfelter's habit of going to her farmhouse when the weather was good, as it was on the weekend of the theft. Mrs. Kleinfelter went on to recount that Kelliher had assisted her in the placement of her antiques in the second floor apartment, which included the Chippendale desk with the secret compartment.

The next witness to appear for the prosecution was Paul Harlan, whose common law wife was John Krall's half-sister. Harlan had known Krall all of his life and had met Kelliher two weeks *before* the reported theft when the three of them went to the racetrack in Kelliher's pickup truck.

Harlan recalls being awakened by his stepson, Terrance Deck, on the 29th of January, 1978, at approximately 12:30 or 1:00 a.m. Terrance informed his stepfather that Krall was at the front door. Harlan got out of bed and was asked by Krall for a screwdriver, sledgehammer and flashlight. Harlan could only give Krall a flashlight. The two then walked over to a pickup truck, with Kelliher seated inside. The vehicle was then backed up to a shed on Harlan's property, situated about 100 yards from the house, and Kelliher and Krall removed a safe from the bed of the truck. The safe was opened and the jewelry, coins and personal documents (on which Harlan observed the name of Kleinfelter affixed thereto) were moved into Harlan's house. At this point, Krall told Harlan that the items were taken from Kleinfelter's Auction Room and he wanted to keep them at Harlan's house until he could locate a buyer. Krall made some phone calls from Harlan's home and discussed with Kelliher, which Harlan overheard, the possibility that a Doug Dohner or Glenn Swanger might be interested in purchasing the merchandise.

Harlan agreed to let Krall keep the goods at his home for a short period. Within an 8-hour span Krall and Kelliher had left and returned to remove the items that they had left behind. Harlan, for his troubles, was paid 12 or 14 dollars in pennies. He also found on the floor, where the valuables had been placed, 2 coins. After reading about the incident in Monday's paper, Harlan anonymously phoned Mrs. Kleinfelter and told her that the burglary had been committed by "Krall and a guy named Bill, because at that time [he] didn't know Kelliher's last name." (N.T. 7/5–6/78 at 102)

Terry Deck testified that on the 29th of January, 1978, he saw his uncle (Krall) and Kelliher wrapping up "an antique" on the floor of his living room. And he saw 2 large boxes in the room at the same time that Krall and Kelliher were present with his stepfather.

Kelliher took the stand in his own defense, unlike Krall, and testified that between the evening of January 28th and the early morning of January 29th of 1978 he was in the company of his girlfriend, Rebecca Brensinger. The two lived together. He also recalled loaning his pickup truck to his younger brother, Patrick, during the period in question and receiving it back the afternoon of January 29th.

Kelliher went on to recount how he had sustained an injury to his right foot (burn) at Industrial Castings in late December of 1977 and convalescing until the first week of February of 1978. He also told of having had a skin graft on his right foot and being advised by his doctor to remain off of his feet. He stated he did so.

The preceding accounting was corroborated by Rebecca Brensinger and Patrick Kelliher.

In point of fact, William Kelliher denied committing the burglary and admitted meeting Harlan *after* the incident at the racetrack with his friend of about 4 years, John Krall. However, he made no effort to conceal the fact that he had been employed at Kleinfelter's for about 2 years before being let go. He told of possessing keys to the business during his employment, being aware of the "lay-out" of the two-story structure and the contents in the second floor

apartment. He likewise did not dispute his familiarity with the Kleinfelters' weekend habit of traveling to their farmhouse in Fredericksburg, for he had been there on occasion as a guest. Nonetheless, he denied his complicity in the reported theft and being present in the company of Harlan and Krall with the stolen goods in the early morning hours of January 29, 1978.

The trial then progressed with the presentment of Krall's alibi witness, Bonnie Sweigart, and the complained of cross-examination by the prosecution. At this stage of the discussion, "[i]t is pertinent to note that [Sweigart] was not called by [Kelliher] as a witness, nor was [Sweigart's] credibility essential to appell[ee's] defense. Under the circumstances of this case, we do not believe that the [improper cross-examination and jury instruction high-lighting this matter] were material enough to require a new trial." *Commonwealth v. Frank,* 263 Pa.Super. 452, 468 n. 8, 398 A.2d 663, 671 n. 8 (1979). Stated otherwise, the remarks may have been marginally improvident in this case, but they were certainly not such as to warrant a new trial as to Kelliher. *See generally Commonwealth v. Guess, supra.* This conclusion is buttressed by the fact that we have documentation at trial, in the charge to the jury and in the case of *Commonwealth v. Krall, supra,* to show that Bonnie Sweigart had been labelled as *John Krall's witness.*

Additionally, we have read through Ms. Sweigart's testimony and she makes no mention whatsoever of Kelliher. Thus, we do not have a scintilla of evidence linking Kelliher's defense with Sweigart's testimony. *See Commonwealth v. Middleton,* 320 Pa.Super. 533, 551, 467 A.2d 841, 850 (1983); *cf. Commonwealth v. Barren,* 501 Pa.Super. 493, 497, 462 A.2d 233, 234 (1983) ("It is well settled that an abstract comment uttered by a prosecutor during his closing statement which makes no specific reference to the accused does not constitute prosecutorial misconduct of such a nature as to necessitate a new trial. In the instant matter, the word 'kinky' was not applied to appellee." [Citations omitted] ); *Commonwealth v. McQuaid,* 273 Pa. Super. 600, 609, 417 A.2d 1210, 1215 (1980) ("This case does

not assist appellant as the redacted statement of appellant's co-defendant did not in any way implicate him."); *Commonwealth v. Hales*, 384 Pa. 153, 156, 119 A.2d 520, 521 (1956) (Concurring Opinion by MUSMANNO, J.) ("the Presiding Judge allowed the trial assistant district attorney to put questions to the girl-defendant on the subject of her aunt's conviction for murder, which certainly had nothing to do with the issue before the Court and jury... [H]ere the district attorney was attempting to suggest guilt by kinship, raising a possible inference that the defendant came from a family of murders, for whom homicide was common occupation and killing a routine."). Accordingly, we fail to see the nexus between the impropriety involving Krall's witness and the jury's ability to render an impartial and judicially sound verdict as to Kelliher. *See Commonwealth v. Middleton, supra.*

Moreover, the jury was cautioned repeatedly to consider the evidence as to each of the accused and not to intertwine the two. Characteristic of this posture by the trial judge is his instruction, "If you have such a [reasonable] doubt regarding any of the elements of the crimes that I have defined for you, or the identity of the perpetrators of that crime or those crimes, then as to it or them, you should find the defendant or defendants, whatever the case may be, not guilty." The trial court also advised the jury, "If you find the defendant, or at least one of them, guilty ..." they were required to go a step farther, as to the receiving stolen property charge, and determine the value of the item taken to aid the judge in sentencing the accused for a felony. (*See* N.T. 7/5–6/78 at 260 & 263)

■ Finally, as already noted, Sweigart's testimony was not in any way "critical" to the prosecution's case against Kelliher. Clearly, the testimony which led to his conviction was that of Kleinfelter, Harlan and Deck. The jury, obviously as is evident from the verdict, disbelieved Kelliher's alibi defense. This was the right of the veniremen as the sole arbiters of fact.

■ We conclude that, given the instructions of the trial court, *see Commonwealth v. Johnson*, 291 Pa.Super. 566,

436 A.2d 645 (1981); *Commonwealth v. Rawls*, 276 Pa.Super. 89, 419 A.2d 109 (1980); *Commonwealth v. Weitkamp*, 255 Pa.Super. 305, 386 A.2d 1014 (1978), and, more importantly, in the absence of *any* association between Sweigart and Kelliher, the Order of the PCHA court is unwarranted. We perceive no "prejudice" inuring to the appellee because of the prosecution's mis-step as to Krall's witness.

Thus, the Order of the PCHA court is reversed and the judgment of sentence is left standing. Jurisdiction is relinquished.

JOHNSON, J., files a concurring statement.

JOHNSON, Judge, concurring:

Although I agree with the result reached by the majority in the instant case, I would dispose of this appeal based on the fact that the issues raised by appellee have been finally litigated. 19 P.S. § 1180–4(a), reenacted at 42 Pa.C.S.A. § 9544(a). *See also Commonwealth v. Hook*, 300 Pa.Super. 181, 446 A.2d 290 (1982) (issue argued and decided adversely to defendant on direct appeal has been finally litigated and may not be raised collaterally in a P.C.H.A. proceeding).