546 A.2d 1249

**COMMONWEALTH of Pennsylvania**

v.

**Elbert FERGUSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1987.

Filed Aug. 25, 1988.

Lenora M. Smith, Philadelphia, for appellant.

Theodore E. Hinckley, Assistant District Attorney, Chambersburg, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence entered after appellant was found guilty by jury of statutory rape, corruption of minors, and criminal conspiracy. Appellant claims that: (1) trial counsel was ineffective for failing to object to the Commonwealth's improper impeachment of a defense witness, and appellant should be granted a new trial because of the improper impeachment; and (2) appellant should be awarded a new trial because the trial court permitted the Commonwealth's expert witness to testify as to a matter within the exclusive province of the jury. For reasons discussed below, we vacate the judgment of sentence and remand for a new trial.

In July 1984, appellant moved in with Brenda Jones [1] and her daughter, M.J. Within a few weeks, appellant began having sexual relations with the eleven-year-old girl. M.J. succumbed to appellant's advances on a regular basis, sometimes at Ms. Jones' request, for approximately two years. On December 16, 1985, appellant was arrested and charged with statutory rape, corruption of a minor, and conspiracy. Ms. Jones was also charged in the case; however, Ms. Jones subsequently chose to enter an A.R.D. program. After trial by jury, appellant was found guilty on all charges and sentenced to a total of three to twenty-five years' imprisonment.

■ Appellant first alleges that he was denied effective assistance of counsel when trial counsel failed to object to the Commonwealth's improper impeachment of Ms. Jones by questioning her as to her placement in A.R.D. When

---

1. Appellant and Ms. Jones were married after his arrest but prior to trial.

assessing ineffective assistance of counsel claims, we must first determine if the underlying claim is of arguable merit; and if so, it must be determined whether the course chosen by counsel had some reasonable basis designed to serve the interests of his client. *Commonwealth v. Christy,* 511 Pa. 490, 515 A.2d 832 (1986); *Commonwealth v. Carroll,* 355 Pa.Super. 569, 513 A.2d 1069 (1986). In addition to the foregoing, appellant has the burden of proving that he was prejudiced by counsel's conduct such that the trial result would likely have been different but for the error. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Appellant claims that his trial counsel was ineffective for failing to object to the following cross-examination of Ms. Jones by the Commonwealth:

> Q. Mrs. Ferguson, you were formally [sic] Brenda Jones, were you not?
>
> A. Yes, sir.
>
> Q. And as Brenda Jones, you were charged with your alleged complicity in these sexual crimes, were you not?
>
> A. Yes, sir.
>
> Q. And under that program you were given probation for two years for your charges that you were charged, with the sexual offenses involving [M.J.], were you not?
>
> A. Yes, sir.
>
> Q. And you were given a cost to pay, were you not?
>
> A. Yes, sir.
>
> Q. And you were ordered that you could not see your daughter except under supervision of Children and Youth Services limited momentary type visits for two years, were you not?
>
> A. Yes, sir.
>
> Q. And you expect us to believe that you accepted all that when nothing happened?
>
> A. It's the truth. Nothing happened.
>
> Q. Do you love your daughter, Mrs. Jones?

A. Yes, I do.

Q. But yet you went into court and accepted a probation whereby you would not see her except for momentary visits with Children and Youth Society for two years and nothing happened?

A. That's correct.

Trial transcript at 206–207. Appellant also highlights counsel's failure to object to the Commonwealth's mention during closing that Ms. Jones "just gave up all rights to this child and went on probation for two years and agreed to pay a fine...." Trial transcript at 340.

In compliance with the standard delineated *supra*, we must first determine if the underlying claim has arguable merit. Our inquiry focuses, then, on whether the Commonwealth's cross-examination as to placement in A.R.D. was a proper subject for impeachment. We must conclude that it was not.[2]

It is well settled that the veracity of a witness may not be impeached by prior criminal conduct which has not led to a conviction. *Commonwealth v. Jackson*, 475 Pa. 604, 381 A.2d 438 (1977); *Commonwealth v. Fuller*, 336 Pa.Super. 507, 485 A.2d 1197 (1984). We have determined that a defendant's admission into an A.R.D. program does not constitute a conviction for purposes of impeachment. *Commonwealth v. Knepp*, 307 Pa.Super 535, 453 A.2d 1016 (1982); *Commonwealth v. Krall*, 290 Pa.Super. 1, 434 A.2d 99 (1982).

In *Krall*, a case factually analogous to the one at bar,[3] we held that the trial court erred in permitting questions by the

2. We note, parenthetically, that the testimony would not have been competent for any other purpose. Although appellant was charged with conspiracy and Ms. Jones was the alleged co-conspirator, our Supreme Court has determined that when two persons are jointly indicted on the same offense but are tried separately, the disposition regarding one co-conspirator is inadmissible as against the other when the evidence is sufficiently prejudicial. *See Commonwealth v. Thomas*, 443 Pa. 234, 279 A.2d 20 (1971); *see infra*.

3. In *Krall*, as in the instant case, the witness was the paramour and the co-conspirator of the defendant. Further, in both cases, the witness was called by the defendant, attempted to exonerate the

prosecution pertaining to a defense witness's admission into an A.R.D. program and remanded the case for a new trial. We declared that, in this circumstance, the burden was on the Commonwealth to prove harmless error beyond a reasonable doubt. *Id.,* 290 Pa.Superior Ct. at 6, 434 A.2d at 101. We further opined therein:

 If the evidence is substantial and a witness's testimony, even if believed did not exonerate the defendant, an error in inquiring about prior criminal activity may be harmless. *See United States v. Trowery,* 471 F.Supp. 23 (W.D.Pa.1978). In this case, the principal evidence concerning appellant's guilt was from [one witness], and apart from his testimony it was not overwhelming.

*Krall, supra,* 290 Pa.Superior Ct. at 5, 434 A.2d at 101.

Our Supreme Court has mandated that in deciding whether an error is harmless because there is properly admitted overwhelming evidence of guilt, the untainted evidence relied upon must be uncontradicted. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978) *citing Schneble v. Florida,* 405 U.S. 427, 431, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). We are required, therefore, to determine if the evidence is uncontradicted prior to finding harmless error on the basis of overwhelming evidence. *Story, supra,* 476 Pa. at 415, 383 A.2d at 167.

We do not believe that the Commonwealth has met its burden of establishing harmless error beyond a reasonable doubt. Examination of the record reveals that the defense presented several witnesses whose testimony contradicted the evidence presented by the Commonwealth. Further, we note that the Commonwealth established its case primarily through the testimony of one witness, the victim. We are compelled to decide that the error was not harmless and, therefore, that appellant's underlying claim has arguable

defendant, and was consequently cross-examined about her complicity in the crime. Each woman's credibility, therefore, was essential to the defendants' defense. *Cf. Commonwealth v. Kelliher,* 325 Pa.Super. 228, 472 A.2d 1091 (1984).

merit.[4]

■ Even though appellant's claim is of arguable merit, if trial counsel's failure to object had some reasonable basis designed to effectuate his client's interests, counsel's assistance is deemed constitutionally effective. *Christy, supra, citing Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352–353 (1967). When a claim of ineffective assistance has arguable merit and there has been no evidentiary hearing below to determine if there was reasonable basis for counsel's actions, then an appellate court must remand for an evidentiary hearing. *Commonwealth v. Shablin,* 362 Pa.Super. 289, 524 A.2d 511 (1987). Under normal circumstances, therefore, we would remand for an evidentiary hearing to give trial counsel the opportunity to explain his failure to object. 42 Pa.C.S.A. § 706; *Commonwealth v. Glaze,* 366 Pa.Super. 517, 531 A.2d 796 (1987). Because of our disposition of appellant's second issue, however, which results in the grant of a new trial, we will not remand for an evidentiary hearing. *See Commonwealth v. Stockard,* 346 Pa.Super. 263, 272, 499 A.2d 598, 603 (1985) ("As we have already vacated judgment of sentence and remanded for a new trial, it is doubly unnecessary for us to remand for an evidentiary hearing").

■ Appellant urges that the trial court committed reversible error by allowing the Commonwealth's expert witness, Dr. Robert E. Johns, to testify in essence that the victim was sexually abused by someone in the position of the appellant thereby permitting the witness to invade the province of the jury. Scrutiny of the record indicates that Dr. Johns was initially called to testify concerning the psychological dynamics of incest. Later, after the victim

4. We note that in *Kelliher, supra,* we held that the court did not err in permitting cross-examination as to placement in A.R.D. The facts of *Kelliher,* however, render it factually distinguishable from the instant case. In *Kelliher* the witness in question was not called by the defense, nor was the credibility of the witness essential to defendant's case. In other words, the remarks may have been "marginally improvident" but were not such as to warrant a new trial. *Id.* 325 Pa.Super. at 240, 472 A.2d at 1098.

took the stand, the Commonwealth questioned Dr. Johns about an interview with the victim prior to trial and what conclusions the expert had reached regarding the case. The expert testified in pertinent part:

> Mr. Antoun: Doctor, in your interview and your testimony and what you've seen and heard in court today, have you obtained enough evidence or information, enough information, on what you can base or form an opinion relative to any similarities or consistencies between this case and the classic situations you described in your earlier educational presentation?
>
> Doctor: I did have an opinion on that matter.
>
> *    *    *    *    *    *
>
> Mr. Antoun: Could you tell us if there are any consistencies relative to the opportunity phase?
>
> Doctor: Yes, I do believe in my clinical interview and observing the witness's statements that there were consistencies with the opportunity phase in that she described, in my opinion, how there was access and opportunity towards her being sexual[ly] abused in a variety of circumstances.
>
> Mr. Antoun: Now, you indicated that part of that phase had to do with an adult with some power or control. Did you have any consistency there?
>
> Doctor: Yes, she described experiencing allegations of sexual abuse in which she was under the control of significant adults in her life.

Trial transcript at 173–175.

In *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988), our Supreme Court recently clarified the standard to be applied when the admission of expert testimony in a child sexual abuse case is challenged. In *Davis*, a clinical child psychologist and expert in treatment of child sexual abuse testified that although he had never examined the victim, "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences." *Id.*, 518 Pa. at 80, 541 A.2d at 316. On cross-examination, the expert elaborated: "My experience with children who have

had some type of sexual experiences when they report about it, typically it is based upon some event that actually occurred and not some fantasized or fabricated experience." *Id.*

In finding this testimony impermissible, the *Davis* Court reasoned:

[Our decision in *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986),] unequivocally prohibited testimony such as that rendered by [the expert] in this case. The expert in *Seese* testified as follows:

It is very unusual that a child would lie about sexual abuse.... [P]repubertal children usually do not lie about matters of sexual abuse no matter how chaotic or uncomfortable their home situation is, one, because they don't know how to lie about it. They don't know what to say. It's not part of the life experience, so everything they say is something they have seen or experienced. It would be very unusual for them to lie.

*Id.*, 512 Pa. at 441–42, 517 A.2d at 921.... We noted that the veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.... The quoted testimony in *Seese* was condemned as "an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment," quoting [*Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976) ]. *Seese*, 512 Pa. at 443–44, 517 A.2d at 922. We concluded:

Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert"

assessment of the truthfulness of the class of people of which the particular witness is a member.

*Id.*

There is no question that the prohibition of Seese applies squarely to the testimony given by the Commonwealth expert in this case. It, too, was an " 'expert' assessment of the truthfulness of the class of people of which the particular witness is a member"....

*Davis, supra,* 518 Pa. at 81, 541 A.2d at 317 (citations omitted) (emphasis in original).

In the instant case, the testimony of Dr. Johns went beyond a discussion of the general dynamics of child sexual abuse. Dr. Johns testified that the complainant's behavior and testimony were closely aligned with that of a child sexual abuse victim. Moreover, the Doctor offered that "she described, in my opinion, how there was access and opportunity towards her being sexual[ly] abused in a variety of circumstances." Trial transcript at 174. We must conclude that Dr. Johns' testimony amounted to an "expert assessment of the truthfulness" of the victim's testimony, and therefore, invaded the province of the jury by presuming to pass upon the veracity of the child witness. As such, the opinion testimony of the expert was inadmissible and the trial court erred in permitting its introduction.

In reaching this conclusion, we emphasize the *Seese* court's reasoning that adherence to a rule excluding such testimony is warranted in view of the consequences that would ensue if such testimony were to be admitted. *See Seese, supra,* 512 Pa. at 444, 517 A.2d at 922. To elaborate, the *Seese* court opined:

For example, if testimony as to the veracity of various classes of people on particular subjects were to be permitted as evidence, one could imagine "experts" testifying as to the veracity of the elderly, of various ethnic groups, of members of different religious faiths, of persons employed in various trades and professions, etc. Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the

*particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member. In addition, such testimony would imbue the opinions of "experts" with an unwarranted appearance of reliability upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess.

*Id.*

In conclusion, it is apparent that the expert testimony in the instant case was improper in light of *Davis* and *Seese.* Because the testimony was necessarily prejudicial to appellant due to the fact that the Commonwealth relied primarily upon the perceived veracity of the victim to establish its case, appellant must be awarded a new trial. *See Seese, supra.*

Judgment of sentence vacated and case remanded for new trial. Jurisdiction relinquished.