616 A.2d 166

SUPERIOR STORES COMPANY, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF HEALTH, SPECIAL SUPPLEMENTAL FOOD PROGRAM FOR WOMEN, INFANTS AND CHILDREN, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided Oct. 6, 1992.

James J. Kutz, for petitioner.

Dawn S. Sunday, Asst. Counsel, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

Superior Stores Company (the corporation) petitions for review of a decision of the State Health Facilities Hearing Board (Board) affirming the Department of Health's denial of the corporation's application to participate in the Commonwealth's Supplemental Food Program for Women, Infants, and Children (WIC program). We reverse.

The WIC program is a Commonwealth administered program, closely related to the federal food stamp program, that is funded by the Commonwealth and United States Department of Agriculture. The Commonwealth's Department of Health (Department) operates the WIC program under contract with the federal government and administers the program in compliance with federal regulations.

The WIC program focuses on supplementing the diet of low-income pregnant and postpartum women, infants, and young children, with certain nutritional foods usually found in a grocery store. The Department utilizes private grocery stores to provide these foods through a voucher system. Grocery stores must apply to the Department for certification, which allows them to participate in the WIC program and accept WIC vouchers in exchange for food. The Department decides whether to grant or reject certification, using criteria authorized by federal regulations and delineated in the WIC Retail Store Handbook (WIC Handbook).

Superior Stores, Number 3 (the Store) is a small neighborhood grocery store located in Harrisburg, Pennsylvania. The Store has participated in both the WIC program and the federal food stamp program for many years. This participation began when the Store was a husband-wife partnership owned by Ellis and Charlotte Freedman and continued after the death of Ellis Freedman in 1987. Upon Ellis Freedman's death, the Store became a sole proprietorship owned by Charlotte Freedman (Freedman). The Store was incorporated on March 1, 1990 under the name "Superior Stores Compa-

ny", and is presently owned and operated by the corporation. Freedman is the President, Director, and a majority shareholder of the corporation.

In 1988, while the Store was still a sole proprietorship, federal investigators discovered that Mildred Crawford, a Store employee, was illegally trafficking in food stamps. Although Freedman was cleared of any personal wrongdoing regarding improprieties occurring at the Store, as owner of the Store she was held vicariously and personally liable under federal law for Mildred Crawford's violations. After unsuccessfully contesting her liability, Freedman signed a Consent Order, dated April 1991, which mandated that she, personally, pay a $20,000 fine plus costs, in lieu of permanent disqualification of the Store from the federal food stamp program. The Consent Order also provided that it would be binding on the heirs, administrators, executors, successors and transferees of Freedman.

In January of 1991, the Department mailed letters to the Store, and all other WIC participating stores, advising the stores of the upcoming recertification process. Freedman completed an application for recertification and indicated that the Store had changed ownership structure to a corporation, of which she was president. Upon discovering the Store's incorporation, the Department notified Freedman that the Store must stop accepting WIC vouchers because under federal regulation, the Store had nullified its present WIC agreement by changing its ownership structure. The Department also stated that the change in ownership required the corporation to apply as a "new store" as though it were seeking certification for the first time, despite the fact that the Store had previously participated in the WIC program.

While reviewing the corporation's application, the Department learned of the Consent Order and the resulting sanctions against Freedman. The Department, by an August 20, 1991 letter, denied the Store WIC certification since the 1991 sanction constituted a failure to meet Selection and Limitation Criteria No. 9 of the WIC Handbook which provides: "The store has not been sanctioned or disqualified from participat-

ing in the Food Stamp Program within the two years prior to application to participate in the WIC program...."

The corporation requested a hearing before the Board. By an order of September 27, 1991, the hearing examiner affirmed the Department's decision to deny WIC certification. The corporation now appeals to this Court for review of the hearing examiner's decision and order.

■ Our scope of review, regarding an adjudication of a statewide administrative agency, is limited to determining whether petitioner's constitutional rights were violated, whether errors of law have been committed by the agency, and whether necessary findings are supported by substantial evidence on the record. *City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Commonwealth Ct. 113, 588 A.2d 67, *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991).

The corporation alleges two inconsistencies in the Department's treatment of the Store during the certification process: (1) the Department demanded a "new store" application in 1991 for WIC certification because of the Store's incorporation, yet it disregarded the corporate structure and denied certification based on acts that occurred during Charlotte Freedman's ownership as a sole proprietor; and (2) the Department has never questioned Charlotte Freedman's motives for incorporating the Store, yet it has disregarded the incorporation, as though the incorporation were a sham transaction, and denied the Store WIC certification.

The corporation's legal arguments are based on these alleged inconsistencies. First, the corporation asserts that the Department's denial of certification, based on sanctions assessed against one shareholder, who was the previous owner of the Store, constituted an error of law, because the Department disregarded the corporate status of the Store without legal justification. We agree.

■ The Department was proper in terminating the Store's participation in the WIC program in January, 1991, when it discovered that the Store had incorporated. The WIC Hand-

book's Terms and Conditions, No. 16, clearly states that a change in store ownership nullifies that store's authorization to participate.[1] The Department was also proper in requiring the corporation to apply as a "new store" because of the change in ownership. However, in requiring a new store application, the Department acknowledged the change in ownership of the Store from the sole proprietorship owned by Charlotte Freedman to the corporation. The Department, accordingly, must evaluate the application for certification based on the corporation's qualifications. The Department may not evaluate the application based on the past actions of one of the corporation's shareholders, *unless* the Department can justify its disregard of the Store's corporate structure.

A corporation must be regarded as an independent entity even if its stock is owned entirely by one person, and a strong presumption exists against disregarding the separation between the corporate entity and its shareholders. *Sweeney v. Department of Transportation,* 120 Pa.Commonwealth Ct. 591, 549 A.2d 1001 (1988). This Court has recognized certain circumstances which justify disregarding corporate form, such as undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetrate fraud. *Kaites v. Department of Environmental Resources,* 108 Pa.Commonwealth Ct. 267, 529 A.2d 1148 (1987).

The Department has not raised any of these circumstances, in the case sub judice, to justify its disregard of the Store's incorporation. Instead, the Department argues that it should be permitted to look beyond the Store's incorporation because the Store after incorporation is operated by the same management team. This perception, that the Store has changed only in ownership structure, does not absolve the Department from regarding the Store as a corporation and does not justify

---

1. The WIC Retail Store Handbook, at pp. 14–15, provides:
   B. GENERAL TERMS AND CONDITIONS
   All applicant stores agree to the terms and conditions enumerated below. WIC retail stores (hereinafter referred to as store(s)' agree—
   16. That the WIC Store Authorization issued to the store shall become null and void when ownership of the store changes.

imputing the actions of a shareholder, which occurred before incorporation, to the corporation.

■ The Department also contends that the terms of the Consent Order, which state that the Order is binding on the successors and transferees of Charlotte Freedman, carry over the sanctions to the corporation as a transferee of Freedman. In the Department's view, this vitiates any need for the Department to justify disregarding the corporation as an independent entity. We disagree.[2]

The terms of the Consent Order delineate how the $20,000 judgment against Charlotte Freedman is to be paid. The Order does not refer to the underlying conduct which caused Freedman to be penalized. Therefore, the provision binding "transferees" of Freedman would only obligate them to pay any part of the judgment left unsatisfied by Freedman. Clearly, the purpose of this provision in the Order is to ensure that the federal government receives full payment of the fine assessed against Freedman. Its purpose is not to mark any prospective owners of the Store with an indelible stigma of wrongdoing.

■ Since the Department cannot justify its disregard for the Store's corporate status, we conclude that the Department committed an error of law in considering the Food Stamp Program's sanctions against Charlotte Freedman in evaluating the corporation's new store application. The only question left to be resolved is whether the Department had other grounds to deny certification to the corporation.

In its August 20, 1991 letter to the corporation, the Department stated that it denied certification because of the sanc-

2. This argument actually contradicts the Department's previous argument regarding the similarity of the management team. If we were to accept the Department's interpretation of the Consent Order, the similarity of the management team would be an irrelevant factor. The sanctions, as well as disqualification from the WIC Program, would attach to any future owner of the Store, regardless of a change in management. Thus, in making its second argument, the Department renders meaningless the factor of similarity in the management team. This is inconsistent with its assertion previously that this factor justified its decision to deny certification.

tions against Charlotte Freedman. The Department did not advance any additional reasons for rejecting the Store's application. Moreover, Michael W. Schappell testified, as a representative from the Department, that the Store met every criteria for participation set out in the WIC Handbook, aside from the sanctions against Charlotte Freedman.[3] Since these sanctions against Freedman are irrelevant to the corporation's ability to participate in the WIC program, and the corporation has met all the other criteria outlined in the WIC Handbook, the Department denied the Store's application without justification.

The Department expresses concern, in its brief, that a decision in favor of the corporation will encourage and permit sanctioned retail stores to erase the consequences of WIC sanctions simply by changing their business structure. This concern is ironic, since the Department, in this case, chose not to challenge the Store's motives in incorporating. The Department, in its brief, states that it has never taken the position that the corporation was a sham transaction undertaken to evade the Department's sanctions. Rather, the Department states that it "accepts her [Charlotte Freedman] testimony as to the basis for her action."[4] The Department, if it suspected that the incorporation was a sham, should have sought to prove this before the hearing examiner. If in fact Charlotte Freedman has incorporated to evade the Department's sanction, she has done so with the Department's blessing.

In reaching our decision in this case, this Court does not intend, in any way, to encourage abuse of the incorporation process to achieve illegal means. Unless the Department presents evidence that the motive to incorporate was improp-

3. See the transcript of the September 10, 1991 hearing before Hearing Examiner Arthur B. King, M.D., at page 11–12.

4. Charlotte Freedman testified that her purpose in incorporating was to reward employees who had run the Store for her over the years with an ownership interest in the Store. (See page 15 of the Transcript of the September 10, 1991, hearing before hearing examiner, Arthur B. King, M.D.). The record identifies Freedman as the "majority shareholder," but does not disclose the identity of any other shareholders or the quantity of stock they hold.

er, however, we must respect her right to incorporate and presume that the incorporation was a good faith transaction.

Accordingly, the decision of the Board affirming the Department of Health's denial of Superior Store Company's application to participate in the WIC Program is reversed.

## ORDER

AND NOW, this 6th day of October, 1992, the order of the State Health Facilities Hearing Board in the above-captioned matter is reversed.