**VALESKY'S MARKET, Petitioner,**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted May 25, 2001.
Decided July 10, 2001.

Douglas W. Ferguson, Meadville, for petitioner.

Karin Simpson Gutshall, Harrisburg, for respondent.

Before McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Valesky's Market (Petitioner) petitions for review from a January 10, 2001 order of a Hearing Examiner for the Department of Health (Department) that affirmed the July 19, 2000 decision of the Department's Division of Special Food Programs to deny Petitioner's application to participate in the Special Supplemental

Nutrition Program for Women, Infants and Children (WIC Program).[1,2] According to the WIC regulations at issue, a WIC authorized store "shall serve or reasonably expect to serve at least 25 participants per month" and "may not have stale-dated allowable foods on its sales floor." 28 Pa. Code § 1103.4(a)(2) and (4). The two issues before us are whether the Hearing Examiner erred in denying Petitioner's application on the grounds that (1) several expired containers of lacto-free Enfamil formula were found on the store's shelves during an announced, on-site review; and (2) the store did not reasonably expect to serve twenty-five participants per month. For the reasons that follow, we affirm.[3]

The federal government delegated the responsibility for administering the WIC Program to the states and, in the Commonwealth, the Department has the overall authority to administer the program. Grocery stores are authorized to participate in the program and to provide supplemental foods to WIC Program participants. "The Department distributes funds to approved local agencies, sets policies and standards, monitors and evaluates services provided by the local agencies and by participating retail stores, maintains fiscal records and submits reports required by law." (Finding of Fact "F.F." 6.) It also "issues to all food vendors a set of WIC Regulations which explains the WIC Pro-

gram, outlines criteria for selecting and limiting WIC retail stores and describes the terms and conditions for participation." (F.F.7.)

Pursuant to the federal regulations directing the states to authorize an appropriate number of food vendors to serve WIC participants, "the WIC program has established Regulations which include criteria to limit the number of stores which can be authorized as WIC stores and to define a minimum number of participants, a minimum required inventory that must be carried and maximum package price for certain of that inventory." (F.F.8.) The participating vendors are recertified every two years.

In the present case, the approved local agency sent Petitioner a February 11, 2000 letter advising it that there would be a certification visit during the week of March 6, 2000. The letter, which referred Petitioner to WIC Program regulations, specified that there would be a minimum inventory check and that waivers were available. (F.F.10); (Certified Record "C.R." 83a).

The local agency conducted the recertification visit on March 10, 2000. The results of the visit were that Petitioner was serving only twenty-three participants at the time of the visit and that there were several expired containers of lacto-free Enfamil formula on the store's shelves.[4]

---

1. The WIC Program was established in 1972 pursuant to an amendment to the Federal Child Nutrition Act of 1966. 42 U.S.C. § 1786 (2000). The WIC Program is a supplemental nutrition program for pregnant, breastfeeding and post-partum women, infants up to their first birthdays and children up to their fifth birthdays, who are determined to be at nutritional risk due to medical problems or poor diets. 42 U.S.C. § 1786(d)(1) (2000).

2. The Secretary of Health and the Office of General Counsel appointed the Hearing Examiner to hear WIC appeals.

3. On appeal, we are limited to determining whether the petitioner's constitutional rights were violated, whether errors of law were made, and whether necessary findings are supported by substantial evidence of record. *B.B. Kim's Market v. Department of Health, Division of Women, Infants & Children (WIC)*, 762 A.2d 1134 (Pa.Cmwlth.2000).

4. The containers at issue had an expiration date of March 1, 2000.

Accordingly, the Department in a July 19, 2000 letter disapproved certification of Petitioner for failure to serve the minimum number of participants and for having stale-dated inventory.

The Hearing Examiner affirmed the Department's denial of Petitioner's application for recertification. With regard to Petitioner's failure to have the required twenty-five participants, the Hearing Examiner rejected Petitioner's mitigating evidence that the renovations of the store explained the lower number. Further, he rejected Petitioner's evidence as to the number of past and present participants, stating that it is the data for the most recent month that controls the decision. Finally, he found that, even though Enfamil was not made by the manufacturer on contract with the Department,[5] it was one that could be prescribed and purchased by a WIC check as per the 1999–2000 WIC Food List and, thus, was subject to the freshness requirement. (F.F.16.) Petitioner's timely petition for review to this Court ensued.

### Stale-dated Allowable Foods

The language of the pertinent regulation is as follows:

(a) *Qualifying for certification or recertification.* To be certified or recertified as a WIC authorized store, *a store shall meet the selection criteria in § 1103.4(a)* (relating to selection and limitation criteria; authorization process) at the time of the onsite review.... The Department will exempt a store from satisfying the selection and limitation criteria only if there is a finding of inadequate participant access, as set forth in § 1103.7 (relating to inadequate participant access).

28 Pa.Code § 1103.1(a) (emphasis added). One of the selection criteria referred to is the prohibition against stale-dated "allowable foods" on the sales floor. 28 Pa.Code § 1103.4(a).

Petitioner's first argument is that the Department erred in denying its application for recertification on the grounds that several expired containers of lacto-free Enfamil formula were present at the store. It points out that "allowable foods" are defined as "foods and infant formula on the WIC food list." 28 Pa.Code § 1101.2. The WIC food list is defined as "a list published by the Department of Health in the Pennsylvania Bulletin of foods and infant formula which may be purchased with WIC checks."[6] *Id.*

Based on its interpretation of the regulations, Petitioner argues that Enfamil was an allowable food subject to the stale-dating requirements only if a participant requested it on his or her WIC check. Noting that the Department presented no testimony or evidence indicating that any participant ever requested Enfamil, Petitioner thus argues that Enfamil was not an allowable food subject to the stale-dating requirements of the WIC Program.

The Department acknowledges that Petitioner was not required to stock lacto-

---

**5.** To insure that the best price is being received for selected infant formulas used under the WIC Program, each state is required by federal statutes and regulations to use a competitive procurement process whereby responsive infant formula manufacturers offer rebates in exchange for the partial exclusive use of the selected manufacturer's infant formulas in the WIC Program. To this end, the Department at specified times issues invitations for bids for purposes of soliciting bids

for rebates on various types of infant formula in order to determine which formula manufacturer is going to be awarded the multi-year "WIC contract."

**6.** A "food voucher," commonly called a WIC check, is a negotiable instrument issued to participants to allow them to buy allowable foods at WIC authorized stores. 28 Pa.Code § 1101.2.

free Enfamil formula because the minimum inventory requirements at 28 Pa. Code § 1103.4(a)(5) do not apply to non-contract brand formula. It asserts, however, that having chosen to stock lacto-free Enfamil formula, Petitioner was required to ensure that the formula met the product freshness requirements prohibiting stale-dated allowable foods on the sales floor. The Department points out that the language of 28 Pa.Code § 1103.1(a), that "a store shall meet the selection criteria in § 1103.4(a)," is mandatory.

Further, the Department disagrees with Petitioner's interpretation that Enfamil is not an "allowable food" under 28 Pa.Code § 1103.4(a)(4). It points out that the infant formula portion of the 1999–2000 WIC Food List lists the brands of formula made by the manufacturer on contract with the Department, but then goes on to provide that "other brands of formula must be specified on the food voucher." (C.R.20a.) Because the WIC Food List does not limit allowable infant formula to the brands specifically listed, but incorporates brands of formula specified on a WIC check, the Department contends that Enfamil is an allowable food subject to the stale-dating requirement.

Moreover, the Department rejects Petitioner's argument that Enfamil is not an allowable food until it is specified on a WIC check, at which point the store has seventy-two hours in which to stock it. *See* 28 Pa.Code § 1103.5(b)(1)(iii). It asserts that Petitioner is confusing the freshness requirements with the minimum inventory requirements.

As the Department stated above, Enfamil was not subject to minimum inventory requirements because it was a non-contract brand formula. In other words, Enfamil only became subject to inventory requirements when a participant presented a WIC check listing it. Thus, given Enfamil's non-contract brand status, a store had a grace period of seventy-two hours, after a participant made a request, to obtain it as "other standard formula specified on the WIC check."

The Department vehemently asserts, however, that stores have no grace period to satisfy freshness requirements, which apply uniformly to all allowable foods, whether listed on the WIC check or included as items which a store must carry pursuant to minimum inventory requirements. Thus, the Department contends that if a food is one that could be listed on a WIC check, whether or not listed, it must meet the product freshness requirements. If it does not, then the store is in violation of the selection criteria it is required to meet in order to be recertified.

▆▆▆ We must agree that the Department did not err in interpreting its own regulations.[7] Petitioner's proffered interpretation of the regulations is unacceptable. While it is true that Petitioner would have had seventy-two hours to obtain lacto-free Enfamil, the presumption is that it would have only needed that time period if it did not already have the inventory on the shelves. Thus, we must agree with the Department that the containers already present on the shelves for immediate sale should have been fresh. As the Hearing Examiner stated in his decision:

> [Petitioner] further argues that he is entitled to get non-contract formula within 72 hours of a request. It seems more likely, in the ordinary course of events, that if a participant entered the store with a WIC check for Enfamil

---

**7.** "When an administrative agency interprets its own regulations, we must give that interpretation great weight unless it is plainly erroneous or inconsistent with the regulation."

*Carlson Mining Co. v. Department of Environmental Resources,* 163 Pa.Cmwlth. 141, 639 A.2d 1332, 1335 (1994).

lactose free, they would pick up what was on the shelf and purchase it, rather than ask for some to be brought in and have to return to get it.

(Hearing Examiner's Decision at 4.)

### Twenty–Five Participants Per Month

The applicable regulation provides as follows:

(a) *Selection criteria.* The Department will use the following selection criteria to identify stores that meet the operational criteria to serve as a WIC authorized store:

. . . .

(2) A store shall serve or reasonably expect to serve at least 25 participants per month.

(i) The Department will provide a store seeking certification which has not been certified previously, an 8–month period to determine if the store is serving 25 participants. The Department may disqualify a store for a period of no less than 6 months . . . if it is not serving 25 participants at the end of the 8–month period.

(ii) The Department *may* deny recertification if the store is not serving 25 participants per month in the most recent month for which the Department has participant data at the time the recertification review is conducted.

28 Pa.Code § 1103.4(a)(2)(i) and (ii) (emphasis added).

Petitioner's second argument is that the Department erred in denying its application for recertification on the grounds that it did not "reasonably expect" to serve twenty-five participants per month. Citing the language in subsection (2)(ii), specifically the word "may," Petitioner argues that the provisions of Section 1103.4 are merely guidelines to be administered by the Department.

As support for Petitioner's argument that the Department should have determined that Petitioner reasonably expected to serve at least twenty-five participants per month, Petitioner emphasizes the evidence it submitted before the Hearing Examiner as to an average number of participants served from September 1999 through November 2000. It argues that the average presents a pattern of participation. In addition, Petitioner reiterates that it extensively remodeled the store from September 1999 to May of 2000, thus explaining the lower number of participants.

As an initial matter, the Department argues that the "reasonable expectation" requirement refers only to new stores. In other words, the Department waits until a new store has been certified for eight months before determining whether it has met the "twenty-five participant" per month selection criterion. It argues that a store seeking recertification is not afforded the same grace period and may be denied recertification if statistics available to the Department for the month prior to the review do not support the minimum participation requirement.

If this Court concludes that the "reasonable expectation" language also applies to existing stores seeking recertification, the Department argues that the regulation's permissive language in subsection (2)(ii) leaves the decision in the Department's discretion. That subsection provides that "[t]he Department may deny recertification if the store is not serving 25 participants per month in the most recent month for which the Department has participant data at the time the recertification review is conducted." 28 Pa.Code § 1103.4(a)(2)(ii).

We again conclude that the Department did not err in interpreting its own regulation. Although it is unclear whether the "reasonable expectation" language in subsection (2) of the regulation refers only

to new stores, the Department clearly had discretion under subsection (2)(ii) to deny recertification if it determined that the store was not serving twenty-five participants per month in the most recent month for which the Department had participant data at the time the recertification review was conducted. In the present case, that month was February of 2000. Thus, we turn to the evidence presented at the hearing and accepted by the Hearing Examiner.

■ The Department points out that the evidence established that in the month prior to recertification review, Petitioner was serving only twenty-three participants. Moreover, it notes that Petitioner did not offer any evidence to contradict proof of the number of participants being served in the month prior to the onsite review. Petitioner's only proof referred to the store's remodeling activities as a possible explanation for the store's failure to meet the requirement for the month prior to review. In addition, Petitioner offered its participation statistics for the months *following* the denial of recertification as support for a finding that the store reasonably expected to serve at least twenty-five participants per month. Those months simply were not relevant.

After reviewing the Hearing Examiner's decision and the record in this matter, we conclude that the Department did not err in denying Petitioner's recertification application. Therefore, we affirm.

### ORDER

AND NOW, this 10th day of July, 2001, the Hearing Examiner's January 10, 2001 order that affirmed the July 19, 2000 decision of the Department of Health's Division of Special Food Programs to deny Petitioner's application to participate in the Special Supplemental Nutrition Program for Women, Infants and Children is hereby affirmed.