**GIANT FOOD STORES,
LLC, Petitioner,**

v.

**DEPARTMENT OF HEALTH,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 2002.

Decided Oct. 3, 2002.

Jeffrey F. Champagne, Harrisburg, for petitioner.

Karin Simpson Gutshall, Harrisburg, for respondent.

BEFORE: PELLEGRINI, J., COHN, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Giant Food Stores, LLC, (Giant) petitions for review from the April 3, 2001 order of a Hearing Examiner for the Department of Health (Department) that affirmed the March 16, 2000 decision of the Department's Division of Special Food Programs to deny its application to participate in the Special Supplemental Nutrition Program for Women, Infants and Children (WIC). Giant raises two issues: whether the Department's decision is unsupported by substantial evidence because it relied on distinctions that are arbitrary and capricious and whether the Department's regulations effectively overturned our decision in *Giant Food Stores, Inc. v. Department of Health*, 123 Pa.Cmwlth. 418, 554 A.2d 174 (1989) (*Giant I* ). We affirm.

The WIC program is a federally funded program designed to provide nutritious foods to supplement the diets of certain low-income women, infants and children at nutritional risk. (F.F.1) It is governed by 7 C.F.R. §§ 246.1–246.28 (federal regulations) and 28 Pa.Code §§ 1103–1113 (state regulations). (F.F.2) The federal government delegated the responsibility for administrating the program to the states and, in Pennsylvania, the Department has the overall authority to administer the WIC program. (F.F.3); *see Valesky's Mkt. v. Department of Health*, 779 A.2d 1251 (Pa.Cmwlth.2001).

In turn, the Department distributes funds to approved local agencies, sets policies and standards, monitors and evaluates services provided by the local agencies and by retail vendors. (F.F.6) The Department issues to all vendors a set of WIC regulations, which explains the program, outlines criteria for selecting and limiting WIC retail stores and describes the terms and conditions of participation. (F.F.7) In compliance with the federal regulations,

the Department promulgated regulations that include, *inter alia*, criteria to limit the number of participating stores, to define a minimum required inventory of currently dated foods that must be carried by participating stores and to set the maximum price charged for that inventory. (F.F.8) Participating stores are recertified every two years. (F.F.9); 28 Pa.Code § 1103.1(d).

In February of 2000, the Department's local agency sent Giant a letter indicating that there would be a recertification inspection during the week of March 6, 2000. (F.F.10) The letter further indicated that there would be a minimum inventory check, that expiration dates would be checked, and that waivers were available.[1] (*Id.*) It also referred Giant to the Department's regulations for further reference. (*Id.*)

The local agency conducted the recertification visit on March 8, 2000. (F.F.11) At that time, six cans of Enfamil NR powder with an expiration date of February 2000 were found on the shelf. (F.F.12) Enfamil is an approved food available to WIC participants. (F.F.13)

■ On March 16, 2000, the Department denied Giant's application for recertification. (F.F.14) Giant appealed, and the Hearing Examiner affirmed the Department's determination.[2] This petition for review followed.[3]

1. If customers do not purchase certain WIC-approved products, the market is eligible for a waiver of that product; *i.e.* the market is exempt from keeping the product in its inventory. (N.T. 10).

2. Giant did not contest the Department's evidence that stale-dated food was found on its sales floor.

3. We are limited to determining whether constitutional rights were violated, errors of law

■ The crux of Giant's argument is that the Department's regulations[4] are incompatible with our decision in *Giant I*. In that case, the vendor entered into an agreement with the Department, which, in relevant part, provided that its authorization to participate in the WIC program would be reviewed no earlier than eighteen months after authorization was granted. Thereafter, a recertification review occurred less than fourteen months after authorization, at which time it was determined that there was a shortage of canned infant milk on the vendor's shelves.

On appeal, the vendor argued that the Department impermissibly revoked its authorization because the recertification inspection occurred four months earlier than permitted by the agreement. It maintained that early termination could only occur if there was a violation of the terms and conditions of the participation that would result in a disqualification. In fact, the Department acknowledged that pursuant to its handbook, inventory shortages in any inspection other than a recertification would have only resulted in a warning to the vendor with an opportunity to correct the problem.

We rejected the Department's position that because the inspection was viewed as a recertification rather than any other inspection, the vendor's removal from the program was appropriate. In doing so, we stated that

were committed or whether the necessary findings of fact are supported by substantial evidence. *Valesky's Mkt.*

4. The Department's regulations governing the selection and management of vendors participating in the WIC program were a direct result of this Court's decision in *Giant Food Stores, Inc. v. Department of Health*, 713 A.2d 177 (Pa.Cmwlth.1998). *See* 29 Pa. B. 3841 (1999).

[i]t is clear from a reading of the contract that the vendor's authorization was valid for a period of two years. The Department admits that the nature of the violation was such that in any period except a recertification one, the penalty would have been a warning. It is difficult to follow the Department's logic. The substantive effect of a one time shortage should make no qualitative difference depending on the time or type of inspection. As to whether a store is properly managed, there is no distinction to be made between a recertification inspection and any other type of inspection.

The finding is not based on substantial evidence. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. If a single product shortage is not sufficient to justify disqualification during a routine inspection, it is not sufficient to terminate [the store] from the WIC program on the basis of a one time shortage during a recertification inspection.

*Giant I*, 554 A.2d at 176 (citations omitted).

Subsequent to our decision in *Giant I*, the Department promulgated regulations governing the certification and recertification (collectively, re/certification) and routine inspection of WIC vendors. The regulations outline the procedures for re/certification of WIC vendors, as well as the procedures used to determine compliance throughout the certification period.

Applicable to the instant matter, the regulations provide that if a vendor has stale-dated allowable foods on its sales floor, it will be disqualified for a period of one year. 28 Pa.Code § 1107.1a(d). During a re/certification review, which is an announced inspection, the vendor is not provided with an opportunity to correct the problem. 28 Pa.Code § 1103.1(f).

However, the Department's regulations further provide for two types of reviews for WIC authorized vendors: high risk [5] and routine reviews. A routine review is conducted to determine whether an authorized vendor is in compliance with 28 Pa Code § 1103.4(a) and (b). *See* 28 Pa.Code § 1105.6(c). Unlike the re/certification process, routine reviews are unannounced inspections of the vendor's premises. *Id.* If the vendor is found to be deficient, a second routine review occurs. *Id.* If two routine reviews detect violations, then the Department provides corrective training to the vendor's personnel. *Id.* A third routine review is then conducted and, if the vendor is still found to be in violation of the regulations, sanctions will be imposed in accordance with 28 Pa.Code. § 1107.1 (including disqualification from participation for a specific period of time, monetary penalties, and withdrawal or nonrenewal of the agreement). *Id.*

In essence, the Department's regulations continue to distinguish between re/certification inspections and routine reviews. Thus, Giant maintains that the Department's regulations, essentially a codification of its handbook, have attempted to circumvent our decision in *Giant I*. *See Seredinski v. Clifton Precision Prods. Co., Div. of Litton Sys., Inc.,* 776 F.2d 56 (3rd Cir.1985); *Samples v. Scibana,* 74 F.Supp.2d 702 (E.D.Mich.1999) (an administrative agency cannot avoid a judicial

---

**5.** A high-risk store is defined as a store "identified as a possible perpetrator of fraud or abuse through analysis of redemption patterns of WIC checks or WIC sales, through compliance violations, or by complaints of participants or WIC Program staff." 28 Pa. Code § 1101.2. A high-risk store is monitored by compliance investigations and inventory audits. 28 Pa.Code § 1105.6(b)(1) and (2).

decision by promulgating or amending a regulation). We disagree.

In accordance with the federal regulations, each state agency entrusted with administering the program must submit a plan with the Department of Agriculture, Food and Nutrition Service. 7 C.F.R. § 246.4(a). As part of its plan, each state must include, *inter alia*, a vendor agreement, which may incorporate a sanction schedule, and a system for vendor monitoring. 7 C.F.R. § 246.4(a)(14)(iii) and (iv).

With regard to the selection of vendors, the state agency must develop and implement criteria to select stores for authorization. 7 C.F.R. § 246.12(g)(3). Pursuant to the federal regulations, the state agency must apply its selection criteria consistently throughout its jurisdiction and may reassess an authorized vendor at any time during the agreement period using the criteria in effect at the time of the reassessment. *Id.* The state agency must terminate the agreements with those vendors that fail to meet the criteria. *Id.* Thus, although the Department's regulations pre-date the requirements of the federal regulations, the Department was nevertheless required to promulgate regulations outlining its administration of the program in order to remain eligible for participation and the receipt of federal funds.

At issue, of course, is the Department's distinction between re/certification inspections and routine reviews and the sanctions related thereto. Giant claims that the distinction is arbitrary; however, a review of the Department's rationale proves otherwise.

Under the federal regulations, the Department is required every two years to review the qualifications of all authorized vendors. 7 C.F.R. § 246.12(g). The vendors understand that their participation in the WIC program is reviewed every two years and that there is no obligation on part of the Department or the vendor to renew the vendor agreement. The re/certification procedure is used to decide which stores are to be selected to participate in the WIC program. 29 Pa. B. 3841 (1999). The procedure

provides an equitable opportunity for all stores to compete for limited store authorizations, at least once every 2 years, and allows the Commonwealth to select and authorize stores which provide the best value to the Commonwealth. This, in turn, provides for the most efficient use of Federal grant funds and allows the Commonwealth to serve more participants.

*Id.* at 3842.

Similarly, the federal regulations require that the Department monitor its vendors. 7 C.F.R. § 246.12(i). The stated purpose of monitoring authorized vendors is

to ensure compliance with applicable Federal and State regulations, to provide a mechanism to identify problems and assist stores in correcting these problems, and to provide the Department with the ability to take action against stores which fail to correct problems or which may be engaging in fraudulent or abusive activity. Monitoring of stores protects the financial integrity of the program and ensures effective and efficient program service to WIC participants.

29 Pa. B. at 3846.

In other words, given the limited number of store slots available,[6] the re/certifi-

---

6. The Department authorizes one store slot per 160 participants in the area, except in the    Philadelphia region. 29 Pa. B. 3841 (1999).

**304**

cation procedure is to ascertain whether the vendor under review is the best-qualified applicant within that geographic area. If not, other applicants are considered. Conversely, a routine inspection is designed to ensure compliance with the regulations during the period of authorization. Thus, a valid distinction exists between re/certification and routine inspections.

■ We do not believe that *Giant I* is controlling for several reasons. To reiterate, the Department was required, post-Giant I, to promulgate regulations setting forth its monitoring procedures in order to remain eligible for federal funds. Once duly promulgated, the Department is entitled to great deference in the interpretation of own regulations. *Valesky's Mkt.*

■ Moreover, the Department's handbook detailing the authorization and inspection procedures for WIC vendors fell within its authority to make policy decisions regarding operation of the program. As such, "[t]he fact that the reviewing court may have a different opinion is not sufficient to interfere with the agency's action and judicial discretion may not be substituted for administrative discretion." *Gwynedd Dev. Group, Inc. v. Dep't of Labor and Industry, Bureau of Labor Standards,* 666 A.2d 365, 370 (Pa.Cmwlth.1995), *appeal granted in part,* 544 Pa. 218, 675 A.2d 1220 (1996).

In addition, a review of the Department handbook was not essential to our decision in *Giant I.* A careful examination of the facts of that case indicates that the Department impermissibly inspected the store four months earlier than that which was authorized by the vendor agreement. The contractual language regarding the timing of the inspection dictated the outcome of *Giant I.*

Accordingly, based upon the foregoing, we affirm.

*ORDER*

AND NOW, this 3rd day of October, 2002, the Hearing Examiner's April 3, 2001 order affirming the decision of the Department of Health's Division of Special Food Programs to deny Petitioner's application for recertification to participate in the Special Supplemental Nutrition Program for Women, Infants and Children is hereby AFFIRMED.