**P & C # 139, Petitioner,**

v.

**DEPARTMENT OF HEALTH, Division of Special Food Programs (WIC), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.

Decided May 6, 2003.

Mark D. Bradshaw, Harrisburg, for petitioner.

Karin Simpson, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

P & C # 139 (P & C) appeals from a decision of the Hearing Examiner who affirmed the determination of the Department of Health, Division of Special Food Programs WIC (Department) disapproving its recertification to the State's Special Supplemental Food Program for Women, Infants and Children (WIC Program) for its failure to meet the Department's mandatory inventory requirements.

P & C is a supermarket located in Sayre, Pennsylvania, and is owned by Penn Traffic Corporation. P & C has been a participant in the Department's WIC Program for many years. The WIC Program is a federal program designed to provide nutritious foods to supplement the diets of certain low-income women, infants and children at nutritional risk and is governed by regulations set forth at 7 C.F.R. §§ 246.1–246.28 and 28 Pa.Code §§ 8.1–8.7, 1101–1113. The Department has authority in Pennsylvania over the administration of the WIC Program, and it enters into two-year contracts with vendors certified to participate in the Program. The Department issues to all vendors a set of WIC regulations which explain the Program, outlines criteria for selecting and limiting WIC retail stores, and describes the terms and conditions of participation.

By letter dated April 22, 2002, the Department notified P & C that it was going to conduct an onsite review of the store during the week of May 13, 2002. The letter indicated that the review would include surveying the highest shelf prices for WIC allowable foods, checking expiration dates and checking inventory requirements. The announced certification visit was held on May 15, 2002, to determine whether P & C met the mandatory criteria for recertification as a WIC authorized store. Because the review revealed that there were only five of the six required 14 ounce cans of soy-based powdered formula (Isomil) on the shelves on the day of review in violation of 28 Pa.Code § 1103.4(a)(5)[1] and §§ 1103.5(a) and (b)(ii)(C),[2] the Department denied P & C's application for recertification based on its failure to meet the mandatory minimum inventory criteria.

P & C filed an appeal, but at the hearing before the Hearing Examiner, it failed to present any evidence. The Department, however, presented the testimony of the agency representative who conducted the onsite recertification review, who testified that the store did not have sufficient quantities of Isomil. The Hearing Examiner affirmed the Department's decision denying P & C's recertification and this appeal followed.[3]

P & C contends that based on our decision in *Giant Food Stores, Inc. v. Department of Health (Giant I)*, 123 Pa.Cmwlth. 418, 554 A.2d 174 (1989), we are required to reverse the Department's decision denying its recertification. It further argues

1. 28 Pa.Code § 1103.4(a)(5) provides:
   (a) *Selection criteria.* The Department will use the following selection criteria to identify stores that meet the operational criteria to serve as a WIC authorized store:
   * * *
   (5) The store shall have available on the premises at all times the minimum inventory requirements in § 1103.5 (relating to minimum inventory) of allowable foods.

2. 28 Pa.Code §§ 1103.5(a) and (b)(ii)(C) provide:
   (a) A store shall have available on the premises at the time of the certification or recertification onsite review, and maintain at all times thereafter while participating as a WIC authorized store, minimum requirements of allowable foods.

   (b) Minimum inventory requirements of allowable foods are as follows:

   * * *

   (ii) Contract soy-based formula:

   * * *

   (C) Six 14 ounce cans of powdered.

3. Our scope of review is limited to determining whether constitutional rights were violated, whether errors of law were committed and whether necessary findings of fact are supported by substantial evidence on the record. *Superior Stores Co. v. Department of Health, Special Supplemental Food Program For Women, Infants and Children*, 151 Pa. Cmwlth. 102, 616 A.2d 166 (1992).

that our decision in *Giant Food Stores, LLC v. Department of Health (Giant II)*, 808 A.2d 299 (Pa.Cmwlth.2002), which disallowed a store's recertification based upon a one-time infraction of the Department's regulations, was decided incorrectly and that it should not be the basis for our decision.[4]

In *Giant I*, the vendor entered into an agreement with the Department that its authorization to participate in the WIC Program would be reviewed no earlier than 18 months after authorization was granted. A recertification review took place less than 14 months after the original certification, at which time it was found that there was a shortage of canned formula on the shelves, and the vendor was denied recertification even though it was its first offense. The Department conceded that had the first offense occurred during an inspection review, the vendor would have received a warning; however, because it occurred during a recertification inspection, removal from the program was required. On appeal, we found that the Department was not justified in removing the vendor from the WIC Program because it was arbitrary for the Department to deny recertification to a store for failure to meet the minimum standards when it would not remove a store's certification for the same reason during an inspection re-

view. We also held that the removal was inappropriate because the agreement specified that a review would not be conducted until 18 months after the authorization was granted and the review occurred within 14 months. Notably, at the time this case was decided, the Department had not enacted any regulations regarding the WIC Program.

In *Giant II*, a recertification review conducted revealed that the store had formula on its shelf that had already passed the expiration date in violation of the Department's regulation at 28 Pa.Code § 1107.1a(d), and the store had not been recertified as a result of that one infraction. On appeal, Giant argued that the Department's regulations were incompatible with our decision in *Giant I*, and that the Department could not distinguish between recertification inspections and routine reviews. We first noted that since our decision in *Giant I*, the Department had promulgated regulations governing certification and recertification and routine inspections of vendors making *Giant I* no longer extant. We went on to hold that a valid distinction existed between certification/recertification because that procedure was to determine eligibility to be a contractor or remain a contractor in the WIC Program, while the unannounced

4. P & C also contends that we should ignore our holding in *Giant II* because the principle of collateral estoppel applies due to our decision in *Giant I* and our unreported decision in *Bi–Lo # 299 v. Department of Health, Division of Special Food Programs (WIC)* (No. 1716 C.D.2000, Pa.Cmwlth., filed August 16, 2001). The dissent agrees, stating that P & C is owned and operated by Penn Traffic Corporation, who was the respondent in *Bi–Lo # 299* as well, and that these cases all dealt with the same legal and factual issues that were litigated to final judgment, the party against whom the doctrine was asserted was a party to the prior litigation, and the party had a full and fair opportunity to litigate the issues. Howev-

er, were we to accept the dissent's argument, there would be different rules for different food chains; there would be one interpretation for all stores owned by Penn Traffic and another interpretation for stores owned by other food stores. Further, this argument suggests that if all of Penn Traffic's stores were to receive the benefit from the decision relative to one store, conversely, it would be necessary for all of its stores to lose their certifications when one store did not meet the WIC Program requirements. Collateral estoppel has no application in this type of situation, and P & C's argument borders on being frivolous.

monitoring review was done to ensure that the contractor was complying with the terms of the contract. We explained that the Department had differing sanctions depending upon the type of review conducted[5] and then held that the distinction between the sanctions imposed for announced reviews and routine reviews was valid stating the following:

> Under the federal regulations, the Department is required every two years to review the qualifications of all authorized vendors. 7 C.F.R. § 246.12(g). The vendors understand that their participation in the WIC program is reviewed every two years and that there is no obligation on the part of the Department or the vendor to renew the vendor agreement. The re/certification procedure is used to decide which stores are to be selected to participate in the WIC program. 29 Pa. B. 3841 (1999). The procedure provides an equitable opportunity for all stores to compete for limited store authorizations, at least once every 2 years, and allows the Commonwealth to select and authorize stores which provide the best value to the Commonwealth. This, in turn, provides

for the most efficient use of Federal grant funds and allows the Commonwealth to serve more participants.

*Id.* at 3842.

* * *

In other words, given the limited number of store slots available, the re/certification procedure is to ascertain whether the vendor under review is the best-qualified applicant within that geographic area. If not, other applicants are considered. Conversely, a routine inspection is designed to ensure compliance with the regulations during the period of authorization. Thus, a valid distinction exists between the re/certification and routine inspections.

*Giant II,* 808 A.2d at 303–304. Not only does *Giant II* authorize the Department to deny recertification based on a vendor's failure to keep its shelves properly stocked, but the federal regulations prohibit recertifying a vendor for the same reason as well.[6]

Because both the state and federal regulations provide that a store will not be

---

**5.** We stated:

> During a re/certification review, which is an announced inspection, the vendor is not provided with an opportunity to correct the problem. 28 Pa.Code § 1103.1(f).
>
> However, the Department's regulations further provide for two types of reviews for WIC authorized vendors: high risk and routine reviews. A routine review is conducted to determine whether an authorized vendor is in compliance with 28 Pa.Code § 1103.4(a) and (b). *See* 28 Pa.Code § 1105.6(c). Unlike the re/certification process, routine reviews are unannounced inspections of the vendor's premises. *Id.* If the vendor is found to be deficient, a second routine review occurs. *Id.* If two routine reviews detect violations, then the Department provides corrective training to the vendor's personnel. *Id.* A third routine review is then conducted and, if the vendor is

still found to be in violation of the regulations, sanctions will be imposed in accordance with 28 Pa.Code. § 1107.1 (including disqualification from the participation for a specific period of time, monetary penalties, and withdrawal or nonrenewal of the agreement). *Id.*
> *Giant II,* 808 A.2d at 302.

**6.** 7 C.F.R. § 246.12(g)(3)(ii) provides:

> (ii) Minimum variety and quantity of supplemental foods. The State agency must establish minimum requirements for the variety and quantity of supplemental foods that a vendor applicant must stock to be authorized. *The State agency may not authorize a vendor applicant unless it determines that the vendor applicant meets these minimums.* The State agency may establish different minimums for different vendor peer groups. (Emphasis added.)

permitted to continue participating in the WIC Program if it does not have adequate stock on hand to serve the needs of WIC mothers, the Department did not err in denying P & C recertification into the WIC Program.

Accordingly, the decision of the Hearing Examiner is affirmed.

### ORDER

AND NOW, this *6th* day of *May,* 2003, the order of the Department of Health, Office of the Hearing Examiner, dated October 18, 2002, is affirmed.

### DISSENTING OPINION BY JUDGE SMITH–RIBNER.

I respectfully dissent from the Majority's decision to affirm the order of the Department of Health to decertify P & C # 139 as a vendor under the WIC Program (Special Supplemental Food Program for Women, Infants and Children). The Department's order was based upon regulations that it promulgated after this Court's decision in *Giant Food Stores, Inc., Store No. 48 v. Department of Health (Giant I),* 123 Pa.Cmwlth.418, 554 A.2d 174 (1989), which reversed the Department's decertification of a WIC Program vendor in that case. The Court ruled that no basis existed for distinguishing between a one-time food product shortage during the Department's routine store review and a one-time shortage discovered during a vendor's recertification review for purposes of imposing sanction. Neither *Giant I* nor applicable federal regulations support or mandate vendor decertification for a first offense, one-time food product shortage as the Department claims.

The Majority opinion as well as the Court's decision in *Giant Food Stores, LLC v. Department of Health (Giant II),* 808 A.2d 299 (Pa.Cmwlth.2002), make much of the fact that no Department regu-

lations existed at the time of *Giant I* and therefore that the Department was at liberty to ignore *Giant I* when the Department promulgated its regulations regarding selection and management of WIC vendors and when it decertified P & C some five months prior to the decision in *Giant II.* First, I disagree that the Department was at liberty to ignore this Court's decision in *Giant I,* and secondly I believe that *Giant II* was incorrectly decided, that it was contrary to prior precedent and to federal regulations and that it should be overruled. In *Giant II* the Court noted that during an announced recertification review the vendor is not provided with an opportunity to correct any deficiency that may exist in the store's inventory. 28 Pa.Code § 1103.1(f). The Court justified the distinction made by the Department between routine reviews and recertification inspections based on the purportedly differing purposes of the reviews and on the general premise that the Department is entitled to great deference in the interpretation of its own regulations. Most importantly, however, the Court in *Giant II* and the Majority here failed to consider all applicable federal regulations governing vendor sanction.

Federal regulations govern the special supplemental nutrition program for women, infants and children, and they require *mandatory* disqualification of vendors under specified circumstances. According to 7 C.F.R. § 246.12(*l*)(1) (mandatory vendor sanctions), the Department *must* permanently disqualify a vendor for conviction of trafficking in food instruments or selling firearms. The Department *must* disqualify a vendor for one year for a pattern of providing unauthorized food items in exchange for food instruments; for three years for one incidence of a sale of alcohol or alcoholic beverages or tobacco products in exchange for food instruments or for a

pattern of vendor overcharges or providing credit or non-food items in exchange for food instruments;[1] and for six years for one incidence of buying/selling food instruments for cash or selling firearms, ammunition, explosives or controlled substances in exchange for food instruments.

State agencies *may* disqualify a vendor who committed prior multiple violations as well, and they *may* impose sanctions for violations not specified above so long as the violations and the sanctions are contained in the state's sanction schedule. The sanctions *may* include disqualification, civil money penalties in lieu of disqualification and administrative fines. 7 C.F.R. § 246.12(*l*)(2)(i). Moreover, the regulations refer throughout to the need for state agencies to ascertain whether vendor disqualification would cause inadequate participant access. *See, e.g.,* Section 246.12(g)(3)(iii), (*l*)(*1*)(ix), (*l*)(2)(iii)(B).

Nowhere in the applicable federal regulations is there a mandate that state agencies *must* decertify a vendor for a first-time food shortage as the Department has contended and as the Majority has held. The Majority cites Section 246.12(g)(3)(ii) to support its conclusion that decertification is mandated. Specifically, that section provides that a "State agency may not authorize a vendor applicant unless it determines that the vendor applicant meets these minimums [for variety and quantity of supplemental foods]." Slip op. at 7, n6. I disagree that this language manifests a federal requirement for mandatory disqualification of a vendor such as the one involved here who, absent prior violations, has five cans of Isomil on its shelf instead of the required six at the time of the recertification inspection. I note the provision immediately following the one cited by the Majority that requires state agencies to determine whether denying authorization would result in inadequate participant access.[2] Section 246.12(g)(3)(iii).

As the Court's decision in *Giant II* was contrary to applicable federal regulations and the whole purpose behind WIC Program vendor monitoring, I would overrule that decision. In fact, in *Giant II* the Court expressly noted the purpose behind the federal vendor monitoring regulations, which is to guarantee that vendors comply with applicable federal and state regulations, to provide a means for the Department to identify problems and to assist vendors in correcting those problems and to allow the Department to take action against vendors who fail to correct their problems or who engage in fraudulent or abusive behavior. While I do not condone any situation in which a vendor does not provide adequate food supply for every WIC Program participant on any given day, I likewise do not agree with the Ma-

---

1. *See, e.g., Barakat v. Wisconsin Department of Health and Social Services,* 191 Wis.2d 769, 530 N.W.2d 392 (Ct.App.1995) (court held that state agency disqualification of WIC Program vendor for three years was proper after vendor pled guilty to federal criminal charges of submission of false claims following state and federal investigation of several vendors for possible fraud); *Crystal Food and Liquor, Inc. v. Howard Consultants, Inc.,* 276 Ill. App.3d 504, 213 Ill.Dec. 258, 658 N.E.2d 1279 (1995) (court upheld vendor disqualification where pattern of overcharging constituted serious and repeated abuse of the WIC Program). *Compare So v. Ledbetter,* 209 Ga. App. 666, 434 S.E.2d 517 (1993) (court reversed vendor disqualification where one-time inadvertent overcharge occurred and would require same sanction as multiple intentional overcharges, and state agency procedures did not allow for consideration of undue hardship placed on participants in the event of disqualification).

2. The hearing examiner found that two other stores were available to WIC Program participants within 2.6 miles. Finding of Fact 13.

jority which places an interpretation upon the federal regulations which is neither consistent with the purposes behind WIC Program vendor monitoring/recertification nor is expressly intended by the regulations.

Lastly, I believe that another significant basis exists for rejecting the Department's arguments and reversing its order. I note that the Majority declined to address P & C's collateral estoppel arguments because the unreported decision in *Bi–Lo # 299 v. Department of Health, Division of Special Food Programs (WIC)* (Cmwlth. Ct., No. 1716 C.D.2000, filed August 16, 2001), *appeal denied,* 568 Pa. 740, 798 A.2d 1291 (2002), that P & C cited is not related to the case sub judice and may not be cited as representing the law of the case.[3] P & C relies on another unreported decision in *Insalcos # 379 v. Department of Health, Division of Special Food Programs (WIC)* (Cmwlth. Ct., No. 2263 C.D.1997, filed April 13, 1998). Both decisions follow the reasoning of *Giant I* and recognize that no basis existed for making a distinction between a one-time food shortage during a routine review resulting in a warning and further reviews and training and a one-time shortage during a recertification inspection resulting in automatic disqualification. Indeed, under the Department's view a high-risk vendor who committed multiple and serious infractions during the contract period would receive less severe sanction than an exemplary vendor with a one-time offense of a food product shortage discovered during a recertification inspection.

The hearing examiner found that all three of the stores, Bi–Lo, Insalcos and P & C, are owned and operated by Penn Traffic Corporation, *see* Finding of Fact 19, and as P & C indicates the Department was the respondent in each of the cases and had a full opportunity to litigate the identical issues presented here. In addition, the Supreme Court denied allocatur review in *Bi–Lo # 299*. P & C argues that collateral estoppel therefore applies to foreclose the Department's relitigation of the same issue in this case. That doctrine applies when the following factors have been satisfied: identical legal and factual issues have been litigated to final judgment; the party against whom the doctrine is asserted was a party to the prior litigation; and the party had a full and fair opportunity to litigate the issues. *Roman v. Jury Selection Commission of Lebanon County,* 780 A.2d 805 (Pa.Cmwlth.2001). It is only necessary that the party against whom the doctrine is asserted, the Department, was a party to the prior actions. *Id.*

The Court's decisions in *Bi–Lo # 299* and in *Insalcos # 379* as well as in *Giant I* dealt with the precise legal and factual issue presented in the case sub judice, *i.e.,* whether the Department may decertify a vendor for a one-time food product shortage discovered during a recertification review. The cases were litigated to final judgment. The Department was a party to the litigation in all of the cases, and the Department had a full and fair opportunity to litigate the issue presented. In fact, *Bi–Lo # 299* and *Insalcos # 379* involved the Department, the same store owner and the same attorneys. Consequently, the

<hr/>

3. In *Commonwealth v. Kelliher,* 325 Pa.Super. 228, 472 A.2d 1091 (1984), the court stated what is now a well-settled concept, i.e., that a memorandum opinion is not to be cited as binding precedent. However, that does not eliminate the memorandum opinion's legiti-

macy or validity, and it shall have the "same force and effect as if it were authored and is controlling as to the facts of that case and is the law of the case until overruled, either by a court en banc or the Pennsylvania Supreme Court." *Id.* at 1095.

Court's internal operating procedures do not preclude P & C from citing and relying on these cases to support its collateral estoppel arguments. *See Commonwealth v. Kelliher,* 325 Pa.Super. 228, 472 A.2d 1091 (1984). The Department, accordingly, should be estopped from relitigating the issue that the Court had already decided to final judgment prior to the Department's decertification order. Hence, I would reverse.

President Judge Colins and Judge McGinley join in this dissent.